UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| PHILLIP A. TALLEY and | } | CASE NO.: 05-44442-JJR-13 |
| | } | |
| JULIE A. TALLEY, | } | CHAPTER: 13 |
| | } | |
| Debtors. | } | |
| | } | |
| PHILLIP A. TALLEY | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | A.P. No. : 06-40038-JJR |
| | } | |
| ALABAMA DEPARTMENT OF PUBLIC SAFETY and W. M. COPPAGE, IN HIS OFFICIAL CAPACITY | } } } } | |
| | } | |
| Defendants. | } | |

**MEMORANDUM OPINION**

This matter came before the Court on the Motion to Dismiss Complaint filed by the defendants, Alabama Department of Public Safety ("DPS") and W. M. Coppage, the Director of DPS (together with DPS, the "Defendants"). The Court has reviewed the statement of facts filed by debtor-plaintiff, Phillip A. Talley ("Talley" and the "Plaintiff") and the Defendants [docket nos. 10 and 11, respectively], the Defendants' Brief in Support of Motion to Dismiss [docket no. 18] and Talley's Memorandum [docket no. 19].

The issue before this Court is whether the suspension of Talley's driver's license, while he was a debtor in a chapter 13 bankruptcy case, was a violation of the automatic stay in effect pursuant to 11 U.S.C. § 362. This Court has jurisdiction over the subject matter and the parties pursuant to

Case 06-40038-JJR    Doc 22    Filed 07/27/06    Entered 07/27/06 15:49:12    Desc Main
Document    Page 1 of 6

28 U.S.C. §§ 1331 and 157(b). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

On October 14, 2005 the Plaintiff and his wife (jointly, the "Debtors") filed a joint petition for relief under chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 *et seq*, the "Bankruptcy Code"). The Debtors' Schedule F lists eight unsecured debts, all of which are fines for traffic violations owing by the Plaintiff to municipalities and state district courts (i.e. traffic courts). The fines total $3,280.50. None of the fines appear to be owing by the Plaintiff's wife, and it is unclear why she is also a debtor in this case. Nonetheless, the Debtors' chapter 13 plan proposes to pay 100% of the fines, plus administrative expenses through monthly installments of $105.00 each over a 60 month commitment period. The plan was confirmed on December 19, 2005. The issue of whether the filing was made in good faith is not before the Court; however, if that issue had been timely raised, the lack of creditors other than those to whom the traffic fines are owing, might have given the Court pause to consider whether the purpose of this case was to avoid the consequences of failing to pay the fines, a purpose for which the relief offered by the Bankruptcy Code was not intended.

On August 11, 2004 and January 3, 2005, the Plaintiff was found guilty, or plead guilty, in St. Clair County District Court (the "District Court") of driving without a license and speeding, respectively. The Plaintiff failed to pay the court ordered fines relating to these offenses. On November 3, 2005, pursuant to Rule 26.11(I)(3) of the Alabama Rules of Criminal Procedure, the District Court ordered the suspension of the Plaintiff's driver's license. The Administrative Office of Courts forwarded the District Court's order to DPS, and on November 7, 2005 (after the Debtors' bankruptcy case was commenced but before the Debtors' chapter 13 plan was confirmed), DPS suspended the Plaintiff's license. On January 24, 2006 the Plaintiff instituted this adversary proceeding alleging the suspension of his driver's license by the Defendants violated the automatic stay imposed by section 362 of the Bankruptcy Code.

This Court is of the opinion that the Defendants' action fell within the exception to the automatic stay set forth in section 362(b)(1)[1]. Section 362(b)(1) states that: "[t]he filing of a petition . . . does not operate as a stay under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor . . . ." 11 U.S.C. § 362(b)(1). Courts considering this issue have found the incarceration of a debtor during his bankruptcy case is not a violation of the automatic stay if the incarceration results from the non-payment of criminal fees and costs. In re Perez, 220 B.R. 216 (Bankr. D.N.J. 1998) (incarceration for failure to pay fines for pre-petition traffics offenses not an attempt to collect debt but continuation of criminal proceeding); In the Matter of Cuevas, 205 B.R. 457 (Bankr. D.N.J. 1997); In the Matter of Sims, 101 B.R. 52 (Bankr. W.D. Wis. 1989).

In the Sims case, the initial charge brought against the debtor, fleeing an officer, was punishable by either payment of a fine or incarceration. 101 B.R. 52. The debtor opted to set up an installment plan to pay the court imposed fine rather than go to jail. The debtor defaulted, which resulted in his incarceration. The Bankruptcy Court in Sims found that "where a convicted defendant is sentenced to a monetary penalty in lieu of a jail term, and then defaults, the incarceration of the defendant is the continuation of the underlying criminal proceeding." Id. at 55. This Court agrees.

Like the debtor in Sims, the Plaintiff in the instant case has pre-petition fines imposed by the District Court for offenses contained in Title 32 of the Code of Alabama. Under Alabama law, when a licensed driver fails to pay a fine the state court has the option of incarcerating the driver under Rule 26.11(I)(1) of the Rules of Criminal Procedure, or suspending the driver's license under Rule

---

[1] Because the actions taken by the Defendants fall within an exception to the automatic stay, this Court need not address the Defendants' additional arguments that St. Clair County is the proper defendant in this adversary proceeding, and the consequences, if any, of the Plaintiff serving a suggestion of bankruptcy after the District Court ordered the revocation of the Plaintiff's license.

26.11(I)(3).  In respect to the Plaintiff, the District Court ordered the revocation of his license.  Here, upon the Plaintiff's default on his monetary obligations (originally ordered in lieu of incarceration),  the  District Court had two options: incarceration or revocation of the Plaintiff's driver's license.  Certainly if the District Court could incarcerate the Plaintiff upon his default, and such incarceration would be a continuation of criminal proceedings, it could also revoke the Plaintiff's driver's license as a continuation of criminal proceedings.  At least one other court within the Eleventh Circuit has held that the post-petition revocation of a suspended jail sentence resulting from a debtor's failure to make payments constitutes the continuation of a criminal proceeding where the underlying charges were criminal.  Rollins v. Campbell (In re Rollins), 243 B.R. 540 (N.D. Ga. 1997).

Based on the plain language of 11 U.S.C. § 362(b)(1) and foregoing authorities, this Court is of the opinion that the Defendants' revocation of the Plaintiff's driver's license for failure to pay fines was the continuation of a criminal proceeding and was not prohibited by the automatic stay.

The Plaintiff's reliance on Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552 (1990) is misplaced.  In Davenport, the Supreme Court held that criminal restitution obligations were "claims" or "debts" for bankruptcy purposes and therefore could be discharged in bankruptcy. Id. at 564.  Though dicta in Davenport suggests that the exclusion contained in section 362(b)(1) permitting the continuation of criminal proceedings might not apply to the continuation or enforcement of restitution orders, the holding in Davenport is limited to whether restitution obligations are dischargeable and does not address the automatic stay issue.  See Bryan v. Rainwater, 254 B.R. 273 (N.D. Ala. 2000) (no violation of automatic stay where probation revocation hearing relating to restitution delinquency held during pendency of bankruptcy case). Additionally, the holding in Davenport has since been superceded by statute.  In 1990, Congress

amended the Bankruptcy Code to expressly prohibit discharge of restitution obligations. 11 U.S.C. § 1328(a)(3).

In conclusion, the Defendants' suspension of the Plaintiff's driver's license was not a violation of the automatic stay because it falls within the exception contained in section 362(b)(1). Inasmuch as there was no violation of the automatic stay, the Defendants' Motion to Dismiss Complaint is due to be granted.[2] The Court will issue a separate order consistent with this opinion pursuant to Fed. R. Bankr. P. 9021.

---

[2]The facts in this case are unique. The Plaintiff's only creditors are those to whom fines for traffic violations are owing, and there are eight such creditors. There are no debts for credit cards, car payments, mortgages, high interest quick-cash advances, medical bills, domestic support obligations, taxes and other debts typically found on debtors' schedules, and relief from which the Bankruptcy Code was intended. The Plaintiff cannot even plead that he needs a license in order to drive to work: he is unemployed and his only income is from social security disability. If the Plaintiff had only one outstanding fine, maybe even two, and was unable to pay them because of the burden of other more typical debts, then perhaps this Court might be more sympathetic to his plight. Nonetheless, even if the Plaintiff's situation had been more typical, there probably is little if any relief that this Court is authorized to provide. This Court would look closely at a case where a debtor with more typical debts, that includes a traffic fine, proposes a chapter 13 plan that will pay the fine along with other debts over an appropriate commitment period, and after sufficient notice the plan is confirmed without objection by the governmental authority imposing such fine. If that authority, post confirmation, attempts to impose alternative punishment because the fine will be paid over the term of the commitment period rather than immediately in one lump sum, it could be argued that the imposition of such alternative punishment might violate section 1327(a) rather than section 362(a). The facts in the Plaintiff's case do not come close to matching those just hypothetically described. The answer to the question of whether section 1327(a) might trump section 362(b)(1) will have to wait for another case with different facts. In any event, what this Court and other Bankrupty Courts should avoid is becoming unofficial courts of appeal from convictions in traffic and criminal courts punished by fines that, if not paid, result in incarceration or, as in this case, revocation of a driver's license. When Congress inserted section 362(b)(1) as an exception to the automatic stay, it underscored that Bankruptcy Courts are not to interfere in the state criminal justice process. The state criminal justice system, including the Department of Public Safety and the criminal courts, is exceedingly better situated and qualified to determine how crimes, violations and infractions should be punished, including when defendants should loose the privilege of holding a driver's license. In some instances, as is possibly the case here, it is not just a matter of punishment, but public safety.

Dated: July 27, 2006

/s/ James J. Robinson  
JAMES J. ROBINSON  
United States Bankruptcy Judge